NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | : | |
|---|---|---|
| IN RE SCHERING-PLOUGH ERISA LITIGATION | : : : : : | **Hon. Dennis M. Cavanaugh** |
| | | **OPINION** |
| THIS DOCUMENT RELATES TO ALL CASES | : : : | Civil Action No. 08-CV-1432 (DMC) |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion by Defendants Schering-Plough Corp. ("Schering"), Schering-Plough Products LLC, Schering-Plough Del Caribe, Inc., Vincent Sweeney, Fred Hassan, Robert J. Bertolini, Hans W. Becherer, C. Robert Kidder, Philip Leder, Eugene McGrath, Carl E. Mundy, Jr., Antonio M. Perez, Patricia F. Russo, Jack L. Stahl, Dr. Craig B. Thompson, Robert F.W. Van Oordt, Arthur F. Weinbach, and Kathryn C. Turner (collectively, "Defendants") to dismiss Plaintiffs' Amended Class Action Complaint ("Amended Complaint") for failure to state a claim pursuant to FED. R. CIV. P. 12(b)(6). Plaintiffs' Amended Complaint asserts claims under the Employee Retirement Income Security Act ("ERISA") for breach of various fiduciary duties. Pursuant to FED. R. CIV. P. 78, no oral argument was heard.

Having considered the submissions of the parties, and for the reasons set forth below, Defendants' motion to dismiss is **denied**.[1]

.

---

[1] In accordance with the discussion below, portions of Defendants' motion will be dismissed without prejudice. See Section III.B.2, supra.

# I. BACKGROUND[2]

### A. PROCEDURAL POSTURE

Plaintiffs bring this action pursuant to Sections 502(a)(2) and (a)(3) of the ERISA, 29 U.S.C. §§ 1132(a)(2) and (a)(3), on behalf of the Schering-Plough Employees' Savings Plan (the "Savings Plan") and the Schering-Plough Puerto Rico Employees' Retirement Savings Plan (the "PR Plan") (collectively, the "Plan" or "Plans"). The Amended Complaint alleges that throughout the Class Period (April 19, 2007 to April 2, 2008), Defendants breached their fiduciary duty of prudent plan management by continuing to invest Plan assets in Schering-Plough Corporation stock even though they knew or should have known that it was not a prudent investment for retirement savings.

The initial Complaint was filed in this Court on March 19, 2008, and was amended on May 14, 2008. A Consolidated Class Action Complaint was filed on October 14, 2008, asserting claims for breach of various fiduciary duties, including: (1) duty of prudence and loyalty; (2) duty to provide complete and accurate information to participants and beneficiaries; (3) duty to monitor fiduciaries; (4) duty to avoid conflicts of interest; and (5) co-fiduciary liability.

On August 31, 2009, the Court dismissed Plaintiffs' claims without prejudice, finding that Plaintiffs' complaint "containe[d] insufficient factual allegations to support the finding that Defendants had knowledge of the ENHANCE study results prior to their unbinding in December, 2007." On October 1, 2009, Plaintiffs filed a First Amended Consolidated Class Action Complaint ("Am. Comp.").

---

[2] The facts in the Background section have been taken from the parties' submissions.

**B.     THE PLANS**

Schering Corporation, a subsidiary of Schering-Plough, established the Employee Savings Plan, and Schering-Plough Products, LLC established the Puerto Rico Savings Plan. See Doc. 52-1, at 5. Schering Corporation and Schering-Plough Products are considered sponsors of their respective Plans. Id.

The Plans are structured as defined contribution, eligible individual account plans ("EIAPs"). Id. This means that participants each have individual accounts and make investment decisions with respect to their accounts. Id. Participants can choose from a wide range of investment options, and as a matter of Plan design, participants also can choose to invest in Schering-Plough common stock ("Company Stock"). Id. The Plans explicitly contemplate Company Stock as a potential investment option. Id. [3]

Neither Plan mandated investment of Plan assets in the Company Stock Fund during the Class Period. See Doc. No. 64, at 3. Rather, "[p]articipants [could] choose from a wide range of mutual funds and other investments funds, and as a matter of Plan design, participants also [could] choose to invest in Schering common stock." Id. Schering's Plan Document, as amended and restated effective January 1, 2006 ("Plan Document"), provides that there are no pre-determined investment options under the Plan. Id. Instead, any Plan investment fund, including the Schering Stock Fund, first must be selected and authorized by the Investment Committee. Id.

---

[3] The Company Stock Fund's holdings are designated as part of an Employee Stock Ownership Plan ("ESOP"). Id.

The Investment Committee is the named fiduciary responsible for investment matters. See Doc. No. 52-1, at 6. In determining the potential investment choices that will be made available to participants, the Investment Committee is guided by the Plan, which provides that those options include "equity funds, international equity funds, fixed income funds, money market funds, a Company Stock Fund, and other funds." Id. Accordingly, although the Investment Committee must select the various investment options, the Plans do specifically contemplate company (Schering) stock ownership, as the Plans "allow for employees to have a means to share in the success of Schering-Plough through investments in the Company Stock Fund." Id.

At all relevant times, both Plans were substantially invested in the Company's Stock Fund, one of the fourteen Plan retirement savings options. Id.[4]

### C. THE STOCK VALUE

In May 2000, Schering and Merck & Co., Inc. ("Merck") commenced a joint venture to develop and market new cholesterol management and respiratory disease medicines in the United States. One of the first drugs jointly produced pursuant to this collaboration was VYTORIN, a combination drug comprised of Schering's ZETIA® (ezetimibe) ("ZETIA") and Merck's statin ZOCOR® (simvastatin) ("ZOCOR"). Id. at 4.

VYTORIN, first introduced in mid-2004, quickly became Schering's top drug. Indeed, in its October 22, 2007 Form 8-K, Schering stated its "ability to generate profits and operating cash flow" became "largely dependent upon the continuing profitability of [] VYTORIN." Id. Plaintiffs

---

[4] As of December 31, 2007, the Savings Plan held 882,935 units in the Schering Stock Fund, or 18.6% of that Plan's total investments (2008 Plan Form 11-K at 14), and the PR Plan held 10,299 units in the Schering Stock Fund, or 17.2% of that Plan's total investments (PR Plan Form 11- K filed with the SEC on June 27, 2008, at 13). Id.

estimated that between 60-70 percent of Schering's earnings during the Class Period depended upon VYTORIN and ZETIA. Id. n.4. Because VYTORIN was vitally important to its business, Schering aggressively marketed the drug during the Class Period by touting it as both a cholesterol lowering agent and an effective tool to lower the risk of heart attacks and heart disease by limiting plaque formation in arteries. Id.

While VYTORIN was being marketed and sold, Schering and Merck conducted a study to determine the effectiveness of VYTORIN at reducing plaque in the arteries called the "ENHANCE trial." Id. Plaintiffs assert that the ENHANCE trial, begun in 2002 and concluded in April 2006, demonstrated that ZOCOR used alone was just as effective as VYTORIN at reducing plaque (i.e., that VYTORIN was ineffective). Id.

Plaintiffs assert that Defendants knew publication of the negative trial results would decimate VYTORIN's sales and Schering's revenues. Id. Fearing the market's reaction, in October and November 2007, various Company representatives (including some of the Defendants) made public statements regarding VYTORIN that failed to disclose the negative ENHANCE results. Id. Further, it is asserted that the ENHANCE results were not presented as initially scheduled at the American Heart Association's Fall 2006 meeting, or any time in 2007. Id. The results were not made public until a series of disclosures between January 14 and March 31, 2008, and even then only in response to pressure from news leaks about the negative results. Id. at 5.

Plaintiff's contend that Defendants knew, or were reckless in not knowing, that Schering's stock price was inflated by the cover-up of the ENHANCE trial results during the Class Period. Id. Notwithstanding this knowledge, they assert, Defendants continued to allow the Plans to acquire and hold Schering stock. Id.

## II. STANDARD OF REVIEW

In deciding a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6), all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff. See Warth v. Seldin, 422 U.S. 490, 501 (1975); Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc., 140 F.3d 478, 483 (3d Cir.1998). If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears beyond doubt that no relief could be granted "under any set of facts which could prove consistent with the allegations," a court shall dismiss a complaint for failure to state a claim. Hishon v. King & Spalding, 467 U.S. 69, 73 ( 1984). In Bell Atlantic Corp. v. Twombly the Supreme Court clarified the Rule 12(b)(6) standard. 127 S.Ct. 1955 (2007). Specifically, the Court "retired" the language contained in Conley v. Gibson, 355 U.S. 41 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief." Twombly, at 1968 (citing Conley, 355 U.S. at 45-46). Instead, the Supreme Court instructed that "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id. at 1965. Ultimately, the question is whether the claimant can prove a set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. Semerenko v. Cendant Corp., 223 F.3d 165, 173 (3d Cir. 2000).

## III. DISCUSSION

Defendants move to dismiss Plaintiffs' Amended Complaint, asserting that Plaintiffs have not stated a claim upon which relief may be granted on their claims for: **(A)** failure to prudently and loyally manage the Plans and Plans' assets, **(B)** failure to provide complete and accurate information to participants and beneficiaries, **(C)** failure to monitor fiduciaries, **(D)** breach of duty to avoid

conflicts of interest, and **(E)** co-fiduciary liability. Additionally, with respect to a number of these claims, Defendants **(F)** contend that Plaintiffs failed to properly plead the fiduciary status of various Defendants.[5]

### A. PLAINTIFFS' CLAIM THAT DEFENDANTS FAILED TO PRUDENTLY AND LOYALLY MANAGE THE PLANS AND PLANS' ASSETS

Defendants assert that Plaintiffs have failed to state a valid claim for breach of the duty of prudence in their management of the Plans. Defendants argue that they are entitled to a presumption that the decision to continue offering Company stock as an investment alternative was prudent, and that Plaintiffs have failed to overcome this burden.

1. Applicable Law

The investment decisions of an ERISA Plan's fiduciary are entitled to varying degrees of judicial deference. See Edgar v. Avaya, Inc., 503 F.3d 340, 345 (3d Cir. N.J. 2007) (citing Moench v. Robertson, 62 F.3d 553, 571 (3d Cir. 1995)). Where—as appears to be the case here—defendants are "not absolutely required to invest in employer securities," but are "more than simply permitted to make such investments," courts are to apply an intermediate abuse of discretion standard. Id. (citing Moench, 62 F.3d at 571); Dann, 2010 U.S. Dist. LEXIS 39045, at *24) (applying the Moench presumption because, "[r]ead as a whole, it is clear that the Plans contemplate and expect that the

---

[5] The parties also dispute whether Plaintiffs lack standing to bring a claim on behalf of the Puerto Rico Plan because Plaintiffs participated only in the Savings Plan. While an individual not participating in an ERISA plan cannot commence an action directly on behalf of said plan, he may represent those plans as part of a class action. Dann v. Lincoln Nat'l Corp., 2010 U.S. Dist. LEXIS 39045, at *10 (E.D. Pa. Apr. 20, 2010). However, "whether [a] Plaintiff has standing to assert claims on behalf of [other Plans] as part of a class action . . . is best resolved on a motion for class certification." See Ward v. Avaya, 487 F. Supp. 2d 467, 481 (D.N.J. 2007) (internal quotations omitted); Pietrangelo v. NUI Corp., 2005 U.S. Dist. LEXIS 40832, at *14 (D.N.J. July 18, 2005) (same).

LNC Common Stock Fund is available as an investment option," and therefore "[b]ecause fiduciaries were more than simply permitted to offer the ESOP, I adopt the intermediate abuse of discretion standard as defined in Moench and Edgar."); Herrera v. Wyeth, 2010 U.S. Dist. LEXIS 27611, at *14-18 (S.D.N.Y. Mar. 17, 2010) (applying Moench; noting that "[f]rom the references to the Stock Fund found throughout the plan agreements, it is clear that the agreements presuppose the existence of the [company] Stock Fund."). As the Edgar Court explained, "an ESOP fiduciary who invests [plan] assets in employer stock is entitled to a presumption that it acted consistently with ERISA by virtue of that decision[; h]owever, the plaintiff may overcome that presumption by establishing that the fiduciary abused its discretion by investing in employer securities." Id. Edgar refers to this deferential abuse of discretion standard as Moench's "presumption of prudence."

The presumption of prudence applies at the motion to dismiss stage. As the Third Circuit concluded in Edgar, a plaintiff can succeed on her ERISA claims only if she had pleaded sufficient facts to overcome the presumption that the plan fiduciaries "acted consistently with ERISA by virtue of [the] decision [to invest in the Avaya Stock Fund]." Id. at 347 (quoting Moench, 62 F.3d at 571). To do so, she had to plead sufficient facts showing "that the fiduciary abused its discretion by investing in employer securities." Id. (citation omitted).

Accordingly, "Plan fiduciaries do not have a duty to depart from ESOP or EIAP plan provisions whenever they are aware of circumstances that may impair the value of company stock." Johnson v. Radian Group, Inc., 2009 U.S. Dist. LEXIS 61334, at *15 (E.D. Pa. July 16, 2009); see also Kirschbaum v. Reliant Energy, Inc., 526 F.3d 243, 256 (5th Cir. 2008) ("One cannot say that whenever plan fiduciaries are aware of circumstances that may impair the value of company stock, they have a fiduciary duty to depart from ESOP or EIAP plan provisions."). Thus, to demonstrate

a breach of fiduciary duty, a plaintiff must allege "dire circumstances," not merely an expected decline in the value of company securities. Edgar, 503 F.3d at 348-49. That said, a "dire situation" need not amount to the company being "on the brink of bankruptcy." See In re Merck & Co., Inc. Sec., Derivative & ERISA Litig., 2009 U.S. Dist. LEXIS 22923, *3 (D.N.J. Mar. 23, 2009).

      2. Analysis

The Court finds that, reading the Complaint in the light most favorable to Plaintiffs, that a claim for breach of the duty of prudence has been adequately stated.

Plaintiffs have alleged "dire circumstances" sufficient to overcome the presumption of prudence at this stage. In particular, Plaintiffs have alleged: precipitous decline in the value of Company stock, Defendants' knowledge of the anticipated harm to the company, as well as the conflicted status of fiduciaries. See Moench, 62 F.3d at 572; In re Merck & Co., Inc. Sec., Derivative & ERISA Litig., 2009 U.S. Dist. LEXIS 22923, at *3 (D.N.J. Mar. 23, 2009) (J. Chesler). As Judge Chesler explained in a case analogous to the one before this Court,

> [t]hough it is clear from this vantage point that Merck survived the withdrawal of Vioxx from the market, the allegations in the Complaint depict a company facing a dire situation. Merck stock plunged by almost 40% following the withdrawal of Vioxx. Billions of dollars in Merck's market value evaporated. The precipitous decline in the company's stock price occurred in the midst of controversy regarding the cardiovascular risks of the drug and Merck's alleged misrepresentations about its safety. The company faced significant exposure to monetary damages claimed in product liability suits. . . . Plaintiffs allege that various studies conducted by Merck over the years it sold Vioxx reinforced the company's concerns with the cardiovascular hazards of Vioxx. Merck's marketing of the drug attracted the attention of the FDA. . . . Yet, the Complaint alleges, all the while Merck continued to promote Vioxx as safe, sales increased, and the company's stock price rose as a result. When the product was ultimately pulled from the market, the effect on Merck's stock was severe.

In re Merck & Co., 2009 U.S. Dist. LEXIS 22923, at *3.

Similarly, here, although in hindsight it appears that Schering stock has recovered, the Complaint sufficiently alleges the existence of a dire situation during the relevant period. Plaintiffs' Amended Complaint contains allegations that (1) study results regarding the efficacy of VYTORIN would greatly diminish both future VYTORIN sales and Schering-Plough's earnings, thereby driving down the price of Schering-Plough's Stock; (2) "[t]he $17.14 stock price drop between [the beginning and end of the Class Period] equaled a 55.29% drop in Schering-Plough's capitalization, and a corresponding drop in the value of the Schering-Plough shares held in the accounts of the Plans' participants and beneficiaries"; (3) Schering faced numerous governmental investigations regarding the disclosure of the ENHANCE study results, including the U.S. Justice Department, a group of 35 attorneys general, the House Energy and Commerce Committee, and the Food and Drug Administration; (4) Schering faced multi-million dollar product liability claims stemming from VYTORIN's marketing. See Doc. No. 64, at 12 n.12; see also In re Merck & Co. Vytorin ERISA Litig., 2009 U.S. Dist. LEXIS 78681, at *7 (D.N.J. Aug. 31, 2009). In short, Plaintiffs assert that VYTORIN (the key product in Schering's portfolio), was critical to the company's continuing success—and the above developments could potentially have a severe impact on the product's sales.

The facts, as alleged by Plaintiff, are sufficient at this stage to meet the joint requirements of FED. R. CIV. P. 12(b)(6), Moench and Edgar.

### B. PLAINTIFFS' CLAIM THAT DEFENDANTS FAILED TO PROVIDE COMPLETE AND ACCURATE INFORMATION TO PARTICIPANTS AND BENEFICIARIES

Defendants assert that Plaintiffs have failed to adequately state a claim for failure to provide complete and accurate information to the Plan participants and beneficiaries. Defendants contend

that the facts plead by Plaintiffs do not suffice to indicate that Defendants misrepresented or omitted material information.

    1. Applicable Law

ERISA fiduciaries must provide participants with the information needed to adequately protect their Plan interests. See Edgar, 503 F.3d at 350 ("It is well-established that an ERISA fiduciary 'may not materially mislead those to whom section 1104(a)'s duties of loyalty and prudence are owed.'") (quoting Meinhardt v. Unisys Corp. (In re Unisys Sav. Plan Litig.), 74 F.3d 420, 440 (3d Cir. 1996)). In the investment context, "a misrepresentation is 'material' if there was a substantial likelihood that it would have misled a reasonable participant in making an adequately informed decision about whether to place or maintain monies in a particular fund." Id.

To allege and prove a breach of fiduciary duty based upon misrepresentations, a plaintiff must establish each of the following elements: (1) the defendant's status as an ERISA fiduciary acting as a fiduciary; (2) a misrepresentation on the part of the defendant; (3) the materiality of that misrepresentation; and (4) detrimental reliance by the plaintiff on the misrepresentation. Daniels v. Thomas & Betts Corp., 263 F.3d 66, 73 (3d Cir. 2001).

The "'duty to inform is a constant thread in the relationship between beneficiary and trustee; it is not only a negative duty not to misinform, but also an affirmative duty to inform when the trustee knows that silence might be harmful.'" Edgar, 503 F.3d at 441 (quoting Bixler, 12 F.3d at 1300 (3d Cir. 1994)).

    2. Analysis

Plaintiffs' disclosure-related claims are premised upon both purported omissions as well as misleading statements on the part of Defendants.

The Court recognizes that "[f]ailure to inform plan participants about specific corporate developments does not constitute a breach of ERISA's disclosure obligations." See id.; see also Dann, 2010 U.S. Dist. LEXIS 39045, at *24; Johnson, 2009 U.S. Dist. LEXIS 61334, at *19 ("That the defendants did not inform Plan participants about several adverse corporate developments prior to the allegedly misleading announcements at issue did not on its own give rise to a breach of the duty of disclosure."); Urban v. Comcast Corp., 2008 U.S. Dist. LEXIS 87445, at *41-42 (E.D. Pa. Oct. 28, 2008). A Plan fiduciary does not need to continuously update Plan participants about all incidents that may influence the corporation's stock value. However, bearing that principle in mind, where a corporation "actively disseminate[s] knowingly false information, through SEC filings, press releases and public marketing," district courts in this circuit have found that the Plan participants can state a disclosure claim under ERISA. In re Merck & Co., 2009 U.S. Dist. LEXIS 22923, at *3; see In re Merck & Co. Vytorin ERISA Litig., 2009 U.S. Dist. LEXIS 78681, at *8-10; Dann, 2010 U.S. Dist. LEXIS 39045, at *35.

This Court finds that, taking Plaintiffs' allegations as true, the case at bar concerns more than claims of straightforward non-disclosures. Plaintiffs do not merely allege that Defendants omitted relevant information, but rather, that Defendants took active steps to prevent information from becoming public.[6] Moreover, such non-disclosures concerned the "top-selling product that was key

---

[6] Defendants urge that this case does not involve misrepresentations, and assert that Plaintiffs have not pointed to statements that are "false or misleading." Plaintiffs respond that "Defendants issued positive statements about VYTORIN throughout the Class Period" despite knowledge that the drug may not be superior to generic statins. See Doc. No. 64, at 15-16. Admittedly, Plaintiffs' mere assertion that Defendants' issued "positive" statements VYTORIN, even in light of potentially damaging test results, does not alone amount to a misrepresentation. Edgar v. Avaya, Inc., 2006 U.S. Dist. LEXIS 23151, at *27 (D.N.J. Apr. 24, 2006). However, as discussed below, the Court will permit Plaintiffs' to proceed on their non-disclosure claims at this time.

to the company's success." In re Merck & Co., 2009 U.S. Dist. LEXIS 22923, at *3.  Under these circumstances, Plaintiffs' disclosure claims are more than mere allegations that Defendants failed to disclose information as to corporate developments.

Additionally, the Court stresses the alleged impact of the non-disclosure in issue.  In many cases a delayed disclosure might not have a true impact on the value of stock—"under the 'efficient capital markets hypothesis,' such a disclosure would have resulted in a swift market adjustment" regardless of the time of disclosure.  Edgar, 503 F.3d at 350.  That is, once informed, the market would immediately reflect the disclosure's impact on the stock value.  See id.  Accordingly, the disclosure would have the same effect on the stock's value, regardless of the precise moment at which the disclosure occurred.

Application of the efficient market hypothesis here, however, may not be proper. Defendants' delay entailed additional repercussions beyond a predicable reduction in stock value: the delay resulted in several government investigations and a "swirl of controversy" surrounding the test results and efficacy of VYTORIN.  Accordingly, the Court cannot find that the timing of the disclosure of the test results should be dismissed as irrelevant to the resulting value of the Company stock.[7]

---

[7] Moreover, in addition to the question this Court has with respect to the application of the efficient market hypothesis here, Plaintiffs also argue that:

> Defendants' argument that Plan participants would have suffered an unavoidable loss on all the shares already in the Plans whenever the disclosure was made ignores the rather obvious fact that shares were added to the Plans during the Class Period. While Defendants' argument (if it were correct) might suggest that some losses were unavoidable, it utterly fails to address losses on shares of Schering stock that were added to the Plans between October 31, 2007, and January 14, 2008. As to those additional shares, Defendants' argument was silent in the first round of briefing and it remains silent now.

Doc. No. 64, at 33.

For the reasons stated, this Court finds the approach of the Court in Dann to be advisable, and will deny Defendants' motion to dismiss Plaintiffs' disclosure claims without prejudice. 2010 U.S. Dist. LEXIS 39045, at *35 ("Because this claim [for non-disclosure] is based on many of the same facts as Plaintiff's prudent investment claim, [the Court] will allow discovery to proceed without prejudice to Defendants to raise the same arguments at the summary judgment stage" if appropriate).

### C. PLAINTIFFS' CLAIM THAT DEFENDANTS FAILED TO MONITOR FIDUCIARIES

Defendants argue that Plaintiffs' claim for breach of the duty to monitor fiduciaries must fail. First, they argue that the duty to monitor is a derivative claim, which "necessarily depend[s]" upon the existence of underlying breaches of fiduciary duties, which Plaintiffs cannot establish. Second, Defendants assert that to maintain such a claim, Plaintiffs are obligated to point out a procedural fault in Defendants' monitoring process, and that Plaintiffs have failed to do so.

Defendants' first argument must be rejected since the Court has determined that Plaintiffs' underlying claims for breach(es) of fiduciary duties will not be dismissed for failure to states a claim.

Defendants' second argument is also unavailing, as Courts have found that "[i]mplicit in the fiduciary duties attaching to persons empowered to appoint and remove plan fiduciaries is the duty to monitor appointees . . . includ[ing the] duty to monitor appointees' actions." Shirk v. Fifth Third Bancorp, 2007 U.S. Dist. LEXIS 26534, at *48 (S.D. Ohio Apr. 9, 2007) (internal citations omitted); In re Honeywell Int'l ERISA Litig., 2004 U.S. Dist. LEXIS 21585, at *50 (D.N.J. Sept. 14, 2004). Accepting the allegations in Plaintiffs' Amended Complaint as true—i.e., that Defendants' "knew or should have known that those they appointed were breaching their fiduciary duties by deliberately misrepresenting or failing to disclose information, and by continuing to invest Plan assets in an

imprudent manner"—Plaintiffs' duty to monitor claims may proceed. 2004 U.S. Dist. LEXIS 21585, at *50.

### D. PLAINTIFFS' CLAIM AGAINST DEFENDANTS BASED ON A THEORY OF CO-FIDUCIARY LIABILITY

For the same reasons as discussed with reference to Plaintiffs' duty to monitor claims, the Court will not dismiss Plaintiffs' claims for co-fiduciary liability. Id.

### E. PLAINTIFFS' CLAIM THAT DEFENDANTS BREACHED THEIR DUTY TO AVOID CONFLICTS OF INTEREST

Defendants argue that Plaintiffs' claim for a violation of the duty to avoid conflicts of interest (i.e., the duty of loyalty) must fail for two reasons: first, it is a derivative claim dependant upon the existence of underlying breaches of fiduciary duties, which Plaintiffs cannot establish; second, Plaintiffs' pleading of the claim is inadequate.

As the court in Cannon v. MBNA Corp. explained, "[a]lleging facts that imply the presence of an incentive for fiduciaries to act in pursuance of their personal financial interests rather than in the interests of Plan participants is sufficient to allow a claim for breach of loyalty to survive a motion to dismiss." 2007 U.S. Dist. LEXIS 48901, at *12-13 (D. Del. July 6, 2007); In re Honeywell Int'l ERISA Litig., 2004 U.S. Dist. LEXIS 21585, at *45-46; In re Sears, Roebuck & Co. ERISA Litig., 2004 U.S. Dist. LEXIS 3241, at *16 (N.D. Ill. Mar. 2, 2004); In re Williams Companies ERISA Litig., 271 F. Supp. 2d 1328, 1342-43 (N.D. Okla. 2003) (denying a motion to dismiss where plan fiduciaries who owned company stock were accused of encouraging employees to continue investing in company stock in order to artificially inflate the stock's price). As such, this Court will not dismiss Plaintiffs' conflict of interest claims at this time.

## F.  PLAINTIFFS' ALLEGATIONS REGARDING THE FIDUCIARY STATUS OF DEFENDANTS

Defendants' final argument is that Plaintiffs have failed to adequately allege that a number of Defendants were acting as fiduciaries with respect to the conduct in issue, namely the Director Defendants, the Compensation Committee Defendants, Defendants Hassan and Bertolini, the Company, and the Oversight Committee.  As such, Defendants assert that the Amended Complaint must be dismissed as to the above Defendants.  The Court cannot agree.

As both parties acknowledge, the definition of "fiduciary" under ERISA has a functional component—a fiduciary's status is determined by the actual "control and authority" that he or she exercises with respect to the Plan.  See Doc. No. 52-1, at 35; Doc. No. 64, at 26.  Therefore, the inquiry as to whether certain Defendants are fiduciaries (and were acting as fiduciaries at the relevant time) is a fact-sensitive one.  See In re Schering-Plough Corp. Erisa Litig., 2007 U.S. Dist. LEXIS 59708, at *19-20; Pietrangelo, 2005 U.S. Dist. LEXIS 40832, at * 17 n.9 ("At this stage . . . [t]he Court will address whether Plaintiff has generally pled sufficient facts to demonstrate that each defendant qualifies as a fiduciary."); Honeywell, 2004 U.S. Dist. LEXIS 21585, at *34 n.13 ("It is true that with respect to some of the Defendants fiduciary capacity is alleged in very broad terms that essentially follow the appropriate statutory language. But at this stage such allegations, unless squarely refuted by Plaintiffs' own pleading or by documents essential to their claims, are sufficient."); see also In re Schering-Plough Corp. ERISA Litig., 420 F.3d 231, 242 (3d Cir. 2005) ("[T]he merits of the claims of breaches of fiduciary duties involve complex legal and factual questions" and that "[a]dditional discovery proceedings . . . may clarify the issues . . . ."). Accordingly, the Court will not resolve questions as to the various Defendants' fiduciary status at this time.

## IV. CONCLUSION

For the reasons set forth, Defendants' motion to dismiss the Amended Complaint is **denied**.

          S/ Dennis M. Cavanaugh
          Dennis M. Cavanaugh, U.S.D.J.

Date:       June __29th__, 2010
Original:   Clerk's Office
cc:        All Counsel of Record
           Hon. Joseph A. Dickson, U.S.M.J.
           File