NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| IN RE SCHERING-PLOUGH CORP. ENHANCE ERISA LITIG. | Hon. Dennis M. Cavanaugh<br><br>**OPINION**<br><br>Civil Action No. 08-1432 (DMC)(JAD) |

**DENNIS M. CAVANAUGH, U.S.D.J.**

This matter comes before the Court on Plaintiff's Motion for Final Approval of Class Certification, Final Approval of Class Action Settlement, Final Approval of the Proposed Plan of Allocation, and for an Award of Attorneys' Fees. ECF No. 136. After considering the submissions of the parties, and based upon the fairness hearing conducted before this Court on May 30, 2012, it is the decision of this Court for the reasons herein expressed, that Plaintiff's Motion is **granted**.

**I.    BACKGROUND**

This matter began on March 19, 2008, when Plaintiff Michael Gradone, individually and on behalf of the Schering-Plough Employees' Savings Plan and the Schering-Plough Puerto Rico Employees' Retirement Savings Plan (the "Plans"), filed a Complaint alleging that Defendants breached their financial duties to certain Plan Participants under the Employee Retirement Income Security Act ("ERISA"), particularly with regard to the Plans' holdings of Schering-Plough stock. On February 10, 2012, Plaintiffs filed a Settlement Agreement with this Court, wherein Defendants will provide $12.25 million (the "Settlement Amount"), which will be distributed to a Settlement

Class consisting of participants in the Plans from April 19, 2007 through April 2, 2008 (the "Settlement Class Period"), in accordance with the proposed Plan of Allocation. ECF No. 134. This Court preliminarily approved the Settlement Agreement on February 17, 2012. ECF No. 135. The Court's February 17, 2012 Order also approved the form and dissemination of class notice, and scheduled a Fairness Hearing for May 30, 2012.

Pursuant to this Court's Order, notice of the Settlement and Plan of Allocation has been provided to over 13,000 Settlement Class members. The deadline for filing of objections to the Settlement Agreement was May 8, 2012, and as of this date, no such objections have been filed on the record. Plaintiffs filed their motion papers on May 1, 2012. The matter is now before this Court.

## II.     LEGAL STANDARDS

### A.     Class Certification

Class certification under Rule 23 has two primary requirements. First, pursuant to Fed. R. Civ. P. 23(a), the party seeking class certification must demonstrate the existence of numerosity of the class, commonality of the questions of law or fact, typicality of the named parties' claims or defenses, and adequacy of representation. Second, the party must demonstrate that the class fits within one of the three categories of class actions set forth in Fed. R. Civ. P. 23(b). Rule 23(b)(1) allows certification of a class if prosecuting separate actions would result in prejudice either to Plaintiff or Defendants. In re Ikon Office Solutions, Inc. Sec. Litig., 191 F.R.D. 457, 466 (E.D.Pa. 200). Rule 23(b)(2) allows certification of a class where the party opposing the class has acted or refused to act in a manner generally applicable to the class, so that final injunctive or declaratory relief would be appropriate with respect to the class as a whole.

**B.     Settlement Approval**

Federal Rule of Civil Procedure 23(e), provides that "[a] class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such a manner as the court directs." FED. R. CIV. P. 23(e). In determining whether to approve a class action settlement pursuant to Rule 23(e), "the district court acts as a fiduciary who must serve as a guardian of the rights of absent class members." In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig., 55 F.3d 768, 785 (3d Cir.1995) (quoting Grunin v. Int'l House of Pancakes, 513 F.2d 114, 123 (8th Cir. 1975), cert. denied, 423 U.S. 864 (1975) (citation omitted)).

Before giving final approval to a proposed class action settlement, the Court must determine that the settlement is "fair, adequate, and reasonable." Lazy Oil Co. v. Witco Corp., 166 F.3d 581, 588 (3d Cir. 1999); Walsh v. Great Atl. & Pac. Tea Co., 726 F.2d 956, 965 (3d Cir. 1983). In Girsh v. Jepson, the Third Circuit identified nine factors, so-called "Girsh factors," that a district court should consider when making this determination: (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. 521 F.2d 153, 157 (3d Cir.1975). "These factors are a guide and the absence of one or more does not automatically render the settlement unfair." In re American Family Enterprises, 256 B.R. 377, 418 (D.N.J. 2000). Rather,

the court must look at all the circumstances of the case and determine whether the settlement is within the range of reasonableness under Girsh. See In re Orthopedic Bone Screw Prods. Liab. Litig., 176 F.R.D. 158, 184 (E.D. Pa.1997); see also In re AT&T Corp. Secs. Litig., 455 F.3d 160 (3d Cir. 2006).

C.  **Plan of Allocation Approval**

The "[a]pproval of a plan of allocation of a settlement fund in a class action is governed by the same standards of review applicable to approval of the settlement as a whole: the distribution plan must be fair, reasonable and adequate." Karcich v. Stuart (In re Ikon Office Solutions, Inc., Sec. Litig.), 194 F.R.D. 166, 184 (E.D. Pa. 2000) (citations and internal quotations omitted); see also Walsh v. Great Atlantic & Pacific Tea Co., 726 F.2d 956, 964 (3d Cir. 1983) ("The Court's principal obligation is simply to ensure that the fund distribution is fair and reasonable as to all participants in the fund.").

D.  **Attorneys' Fees**

The Third Circuit Court of Appeals identified several factors--the Gunter factors--that a district court should consider when evaluating a motion for an award of attorneys' fees. These factors include: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiff's counsel; and (7) the awards in similar cases. In re Rite Aid Corp. Sec. Litig., 396 F.3d

294, 301 (3d Cir. 2005) (citing Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 n.1 (3d Cir. 2000)).

### III.   DISCUSSION

#### A.   Class Certification

1. Numerosity, Commonality, Typicality, and Adequacy

The numerosity element is met where the class is so numerous that joinder of all class members is impracticable. The Third Circuit has advised that the numerosity requirement is satisfied where the proposed class consists of "more than 90 geographically dispersed plaintiffs." Eisenberg v. Gagnon, 766 F.2d 770, 785-86, cert. denied, 424 U.S. 946 (1985). In this instance, there are over 13,000 members of the Settlement Class. Accordingly, the numerosity requirement is met.

The commonality requirement is satisfied if named plaintiffs share at least one question of fact or law with the prospective class. In this instance, the Complaint alleges breach of fiduciary duties owed under ERISA, the determination of which involves issues of law and fact that are identical for all Settlement Class members. The commonality requirement is thus satisfied.

The typicality requirement is satisfied where the class representatives and absent class members point to the same broad course of alleged conduct. The presence of some factual differences will not preclude a finding of typicality. In this instance, the typicality requirement is satisfied because the claims of both named Plaintiffs and the absent class members are wholly based on the violation of duties owed under ERISA in the same course of conduct.

Finally, the adequacy requirement is met where the class representatives' interests are not adverse to those of other members of the class, and the class representative is represented by

attorneys who are qualified, experienced, and generally able to conduct the litigation. Here, there is no doubt that lead plaintiffs have acted, and continue to act, in the best interest of the settlement class. Further, counsel's firm resumes and experience clearly indicate their adequacy.

2. Rule 23(b)(1)

Plaintiffs seek certification under Rule 23(b)(1)(A) or, alternatively, under Rule 23(b)(1)(B). In either instance, the class may be certified. The class satisfies Rule 23(b)(1)(B) because absent certification as a class action, both parties face the possibility of inconsistent judgments, such as the possibility that in one case Defendants may be held liable as fiduciaries, and in another they may not. The class may also be certified under Rule 23(b)(1)(B), because adjudication with respect to individual member of the Settlement Class would be dispositive of the interests of the other members of the Class, as the recovery would go directly to the Plan and not the participants. Accordingly, the matter may be properly certified as a class action.

**B.   Approval of Settlement**

1. Complexity, Expense and Likely Duration of Litigation

This factor is concerned with assessing the "probable costs, in both time and money, of continued litigation." In re Cendant Corp. Litig., 264 F.3d 201, 234 (3d Cir. 2001). Significant delay in recovery if this case proceeds to trial favors settlement approval. See, e.g., In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 536 (3d Cir. 2004); Weiss v. Mercedes-Benz of N. Am., Inc., 899 F. Supp. 1297, 1301 (D.N.J. 1995). This lawsuit has been ongoing since March 19, 2008. Without settlement, the parties would need to engage in extensive additional discovery, as well as

the exchange of pre-trial, and potentially, trial and post-trial motions. If the case does indeed go to trial, there will necessarily be significant additional delay. Therefore, this factor favors settlement approval.

2. Reaction of the Class to Settlement

This factor requires the Court to evaluate whether the number of objectors, in proportion to the total class, indicates that the reaction of the class to the settlement is favorable. The Court also notes that the second <u>Girsh</u> factor is especially critical to its fairness analysis, as the reaction of the class "is perhaps the most significant factor to be weighed in considering [the settlement's] adequacy." <u>Sala v. National R.R. Passenger Corp.</u>, 721 F. Supp. 80, 83 (E.D. Pa. 1989); <u>Fanning v. AcroMed Corp. (In re Orthopedic Bone Screw Prods. Liab. Litig.)</u>, 176 F.R.D. 158, 185 (E.D. Pa. 1997) (stating that a "relatively low objection rate militates strongly in favor of approval of the settlement") (internal citations omitted). Further, silence constitutes tacit consent to the agreement. No objections have been filed in this matter. This militates strongly in favor of a finding that the Settlement is fair and reasonable, and is entitled to nearly dispositive weight. <u>New England Carpenters Health Benefits Fund v. First DataBank, Inc.</u>, 602 F. Supp. 2d 277, 282, 285 (D. Mass. 2009); <u>In re Linerboard Antitrust Litig.</u>, 321 F. Supp. 2d 619 (E.D. Pa. 2004). The second <u>Girsh</u> factor, therefore, weighs strongly in favor of approving the Settlement.

3. Stage of the Proceedings and Amount of Discovery Completed

Pursuant to the third <u>Girsh</u> factor, the Court must consider the "degree of case development that Class Counsel have accomplished prior to Settlement," including the type and amount of

discovery already undertaken. GMC, 55 F.3d at 813. In short, under this factor the Court considers whether the amount of discovery completed in the case has permitted "counsel [to have] an adequate appreciation of the merits of the case before negotiating." In re Schering-Plough/Merck Merger Litig., No. 09-1099, 2010 U.S. Dist. LEXIS 29121 at *30 (Mar. 26, 2010). The discovery analyzed encompasses both formal and "informal" discovery, including discovery from parallel proceedings, companion cases and even third parties, such as experts or witnesses. Id. Here, as Plaintiff notes, the Settlement was reached after over four years of litigation and the review of Plan documents and tens and thousands of internal documents. Further, Plaintiff's Counsel deposed several witnesses, responded to dispositive motions, and engaged in and reviewed expert analysis of several key issues in this litigation. It is thus clear that Plaintiff's counsel have an adequate appreciation of the facts in this matter, and this factor weighs in favor of approval.

4.-5. Risks of Establishing Liability and Damages

A trial on the merits always entails considerable risk. Weiss, 899 F. Supp. at 1301. "By evaluating the risks of establishing liability, the district court can examine what the potential rewards (or downside) of litigation might have been had class counsel elected to litigate the claims rather than settle them." GMC, 55 F.3d at 814. "The inquiry requires a balancing of the likelihood of success if 'the case were taken to trial against the benefits of immediate settlement.'" In re Safety Components Int'l, 166 F. Supp. 2d 72, 89 (D.N.J. 2001). ERISA class actions based on the same theories as the present matter involve a complex and rapidly evolving area of law. This uncertainty, combined with the risks associated with a potential trial and the need to overcome likely summary judgment motions, indicates that Plaintiff faced significant risks in establishing liability and damages

if the matter proceeded to trial. This factor therefore weighs in favor of approval.

6. Ability of Plaintiffs to Maintain Class Certification

Plaintiff's brief does not address this issue. However, the absence of one <u>Girsch</u> factor does not render a settlement unfair. <u>In re American Family Enterprises</u>, 256 B.R. 377, 418 (D.N.J. 2000). Accordingly, this factor weighs neither against nor in favor of settlement.

7. Ability of Defendants to Withstand a Greater Judgment

To evaluate whether the Settlement Agreement is fair to Plaintiff, the Court must evaluate whether Defendants could withstand a judgment much greater than the amount of the settlement. <u>In re Schering-Plough/Merck Merger Litig.</u>, 2010 U.S. Dist. LEXIS 29121 at *37. Plaintiff indicates that Defendant would surely be able to withstand a judgment in an amount greater than $12.25 million. This does not, however, standing alone, render the settlement unreasonable. See <u>In re Painewebber Ltd. P'ships Litig.</u>, 171 F.R.D. 104, 129 (S.D.N.Y. 1997). Accordingly, this factor does not weigh against a finding of reasonableness.

8.-9. Reasonableness of the Settlement Fund in Light of the Best Possible Recovery, and in Light of the Attendant Risks of Litigation

"According to <u>Girsh</u>, courts approving settlements should determine a range of reasonable settlements in light of the best possible recovery (the eighth <u>Girsh</u> factor) and a range in light of all the attendant risks of litigation (the ninth factor)." <u>GMC</u>, 55 F.3d at 806. "The last two <u>Girsh</u> factors evaluate whether the settlement represents a good value for a weak case or a poor value for a strong

case." In re Schering-Plough/Merck Merger Litig., 2010 U.S. Dist. LEXIS 29121 at *38-39. In this matter, as noted above, Plaintiff faces many uncertainties regarding the proof of damages. For instance, if only Company Stock added to the Plans was considered in the damages analysis, and not full liquidation of all Company Stock in the Plans, the damages amount would likely be under the amount currently sought. Accordingly, this factor weighs in favor of settlement.

10. Summary of Factors

In sum, upon balancing the Girsch factors, the Settlement appears fair, adequate, reasonable and proper, and in the best interests of the class and the shareholders.

C. **The Plan of Allocation**

In determining whether a Plan of Allocation is fair, reasonable, and adequate, courts give great weight to the opinion of qualified counsel. White v. NFL, 822 F.Supp. 1389, 1420 (D.Minn. 1993). Under the present Plan of Allocation, each Participant receives a share of the Net Proceeds based approximately on the decline in the value of Schering-Plough Stock Fund shares he or she held in a Plan account over the Class Period in comparison with the decline in value of the Schering-Plough Stock Fund units held by other Participants in their Plan accounts. The distribution takes place through the Plans so as to realize the tax advantage of investment in the Plans. This is a simple, neutral, and commonly used structure that has been approved in a number of stock fund ERISA cases. See, e.g., In re AOL Time Warner ERISA Litig., No. 02-8853, 2006 WL 2789862, at *10 (S.D.N.Y. Sept. 27, 2006). The Plan of Allocation is therefore approved as fair, adequate, and reasonable.

**D.     Attorneys' Fees**

Class Counsel seeks an award of 33.3% of the Settlement Fund, representing a multiplier of Class Counsel's lodestar of 1.6. Class Counsel also seeks reimbursement of their out of pocket expenses in the amount of $112,207.20. Finally, Class Counsel requests case contribution awards in the amount of $10,000 to Michael Gradone and $5,000 for T.C. Davis. The Class Notice provided the Settlement Class members with advance notice that Class Counsel would seek these awards. No objections have been filed by Class Members or by Defendants.

1. The Size of the Fund Created and the Number of Persons Benefitted

Approximately 13,000 individuals will benefit from this litigation. Plaintiff's Counsel's efforts have resulted in a substantial cash recovery for those individuals, especially when considered in light of the above discussed risks faced in this litigation. Given the size of the fund created and the number of individuals benefitted, this factor weighs in favor of approval. See, e.g., Hall, 2010 WL 4053547, at *16.

2. The Presence or Absence of Objections

As discussed above, no objections have been filed in this matter. "The lack of objections to the requested attorneys' fees supports the request, especially because the settlement class includes large, sophisticated institutional investors." Smith v. Dominion Bridge Corp., No. 96-7580, 2007 WL 1101272 (E.D.Pa. April 11 2007) (citing Stoetzner v. U.S. Steel Corp., 897 F.2d 115, 118-19 (3d Cir. 1990)). This factor therefore favors the award of Plaintiff's Counsel's requested fee.

3. The Skill and Efficiency of the Attorneys Involved

    The skill and efficiency of Class Counsel is high, as demonstrated by the supporting documents submitted by Class Counsel, as well as the Court's own experience with Class Counsel. Class Counsel are highly skilled attorneys with substantial experience in class action litigation. Therefore, this factor favors an award of attorneys' fees.

4. The Complexity and the Duration of the Litigation

    As discussed above, this is a significantly complex litigation that has been ongoing for four years. This factor weighs in favor of an award of attorneys' fees.

5. The Risk of Nonpayment

    Plaintiff's Counsel undertook this action on a contingency fee basis, have carried the risk of non-payment throughout the four years of ongoing litigation, and have devoted 4,640 hours to this litigation. Courts routinely recognize that the risk created by undertaking an action on a contingency fee basis militates in favor of approval. See, e.g., McGee v. Continental Tire North America, Inc., No. 06-6234, 2009 WL 539893, at *15 (D.N.J. Mar. 4, 2009) ("Class Counsel accepted the responsibility of prosecuting this class action on a contingent fee basis and without any guarantee of success or award. Accordingly, this factor weighs in favor of approval."); In re Prudential-Bache Energy Income P'ships Sec. Litig., No. 888, 1994 U.S. Dist. LEXIS 6621, at *16 (E.D.La. May 18, 1994) (stating that "[c]ounsel's contingent fee risk is an important factor in determining the fee award. Success is never guaranteed and counsel faced serious risks since both trial and judicial review are unpredictable."). Accordingly, this factor weighs in favor of approval of the award of

attorneys' fees.

6. The Reasonableness of the Fee When Compared with Similar Cases

As discussed above, Plaintiff's Counsel have reviewed tens of thousands of pages of documents, conducted numerous depositions, and have spent over 4,000 hours in the pursuit of this litigation. In this matter, Plaintiff requests a fee of 33.3%. Courts have generally awarded fees in the range of nineteen to forty-five percent. Hall, 2010 WL 4053547, at *21; see, e.g., In re Remeron Direct Purchaser Antitrust Litig., No. 03-0085, 2005 WL 30080, at *12-18 (D.N.J. Nov. 9, 2005) (Hotchberg, J.) (confirming 33.3% fee). Further, if this were not a class-action litigation, a contingent fee in such a complex case would likely range between 30 and 40 percent of the recovery. See, e.g., Hall, 2010 WL 4053547, at *21 (requested fee is "consistent with a privately negotiated contingent fee in the marketplace"). Plaintiff's requested fee is therefore reasonable.

Courts in this Circuit confirm the reasonableness of a fee by using the lodestar calculation method when a fee award is based on percentage of recovery. In re Merck & Co., Inc. Vytorin Erisa Litigation, No. 8-285, 2010 WL 547613 at *12 (D.N.J. Feb. 09, 2010). The lodestar analysis is performed by multiplying the number of hours reasonably worked on a client's case by a reasonable hourly billing rate for such services based on the given geographical area, the nature of the services provided, and the experience of the attorneys. Id. (citations omitted). "The reasonableness of the requested fee can be assessed by calculating the lodestar multiplier, which is equal to the proposed fee award divided by the lodestar. But the lodestar multiplier need not fall within any predefined range, provided that the District Court's analysis justifies the award." Id. (citations omitted). "After a court determines the lodestar amount, it may increase or decrease that amount by applying a

lodestar multiplier." Id. (citations omitted).

Plaintiff's Counsel's lodestar for this action, based on the 4,640 hours devoted to this litigation and on the usual billing rates of its attorneys and professionals, is $2,539,991.50. Joint Decl. ¶ 36, ECF No. 136-4. Plaintiff's requested fee constitutes a multiplier of 1.6 times the lodestar, which is an amount commonly approved by courts of this Circuit. Accordingly, the lodestar cross check confirms that the requested fee is reasonable.

7. Summary of Factors

In sum, the balance of factors weigh in favor of an award of attorneys' fees.

C. Reimbursement of Expenses

Class Counsel additionally asks the Court for reimbursement of $112,207.20 in litigation expenses incurred in connection with this litigation. This type of reimbursement has been expressly approved by the Third Circuit. Abrams v. Lightolier, Inc., 50 F.3d 1204, 1225 (3d Cir. 1995). The test for this inquiry is whether the particular costs are the type routinely billed by attorneys to paying clients in similar cases. Class Counsel's declarations indicate that their separate expenses are in the amount sought. The Notice provided to the Settlement Class indicated that Class Counsel would seek an award up to $200,000,000.00. No class member has objected. Accordingly, reimbursement in the amount sought is warranted.

D. Incentive Fees

Finally, Class Counsel seeks permission to pay incentive fees to the representative Plaintiffs,

in the amount of $10,000 to Michael Gradone and $5,000 to T.C. Davis. It is not uncommon to award such fees. See, e.g., Cullen v. Whitman Med. Corp., 197 F.R.D. 136, 145 (E.D.Pa.2000) (quoting In re S. Ohio Corr. Facility, 175 F.R.D. 270, 272 (S.D.Ohio 1997)) ("[C]ourts routinely approve incentive awards to compensate named plaintiffs for services they provided and the risks they incurred during the course of the class action litigation."). Class Counsel notes that each Plaintiff has contributed to this litigation and benefitted the Class by reviewing the pleadings, staying informed with the litigation, providing Class Counsel with information and materials, providing information and documents responsive to Defendants' discovery requests, preparing to sit for depositions, and reviewing the Settlement Agreement. The Court is convinced that the award sought is appropriate, and accordingly, Plaintiff's request for an award of incentive fees is granted.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion is **granted**. An appropriate Order accompanies this Opinion.

                                                                                                                                    /s/ Dennis M. Cavanaugh
                                                                                                                                    Dennis M. Cavanaugh, U.S.D.J.

Date:       May 31, 2012
Orig.:      Clerk
cc:          All Counsel of Record
             Hon. Joseph A. Dickson, U.S.M.J.
             File